IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT

FILED AUG 21 2007
BARBARA DUNN CIRCUIT CLERK
BY_____ D.C.

**BDS INVESTMENTS, LLC**                                          **PLAINTIFF**

vs.                                      CIVIL ACTION NO. 251-07-791CIV

**BIODERM SCIENCES, INC.,**
**J. RANDALL HOGGLE, DANIEL S. ROMNEY,**
**JAMES MILLER and HEALTH PATHWAYS, INC.**          **DEFENDANTS**

## COMPLAINT
### (JURY TRIAL DEMANDED)

COMES NOW Plaintiff, BDS Investments, LLC, by and through its undersigned counsel of record, and files this Complaint against Defendants, BioDerm Sciences, Inc., J. Randall Hoggle, Daniel S. Romney, James Miller and Health Pathways, Inc., and in support of its claims for relief will show unto the Court the following:

### PARTIES

1. BDS Investments, LLC, ("BDS") is a Mississippi limited liability company authorized to do business in the State of Mississippi.

2. BioDerm Sciences, Inc., ("BioDerm") is a Delaware corporation authorized to do business in the State of Mississippi. Documents provided by BioDerm to BDS state that BioDerm's "global headquarters" are located in Oxford Mississippi. Further, documents on file with the Mississippi Secretary of State reflect that BioDerm's administrative office is located at 12800 Middlebrook Road, Suite 210, Germantown, MD 20874. BioDerm may be served with process through its registered agent: J. Greg Perkins, Enterprise Center, 9 Industrial Park Drive, Oxford, MS 38655.

3. J. Randall Hoggle is a resident of Maryland. Hoggle is the CEO and Chairman of the Board of Directors of BioDerm. Hoggle also is the President, CEO and Chairman of the

Board of Directors of Health Pathways, Inc. Hoggle may be served with process at 12800 Middlebrook Road, Suite 210, Germantown, MD 20874.

4. Daniel S. Romney is the CFO and Secretary of BioDerm. Romney also is the CFO and a member of the Board of Directors of Health Pathways, Inc. Romney may be served with process at 12800 Middlebrook Road, Suite 210, Germantown, MD 20874.

5. James Miller is the former President and a former member of the Board of Directors of BioDerm. Miller may be served with process at Enterprise Center, 9 Industrial Park Drive, Oxford, MS 38655.

6. Health Pathways, Inc., ("Health Pathways"), is a Maryland Corporation not authorized to do business in the State of Mississippi. Health Pathways' principal place of business is located at 12800 Middlebrook Road, Suite 210, Germantown, MD 20874.

## JURISDICTION & VENUE

7. This Court has subject matter jurisdiction over this action, pursuant to Miss. Code § 9-7-81, as the amount in controversy is in excess of the statutory minimum and no other court is vested with exclusive subject matter jurisdiction over this action.

8. Venue in this Court is appropriate, pursuant to Miss. Code § 11-11-3, as substantial acts and omissions occurred in Hinds County, Mississippi, and substantial events that caused Plaintiff's injury occurred in Hinds County, Mississippi.

## FACTS

9. The business conducted by BioDerm was formerly a division of Health Pathways. Health Pathways incorporated BioDerm as a subsidiary in 2003. Sometime prior to 2006, Health Pathways transferred the business conducted by its "BioDerm" division to BioDerm. To date, BioDerm and Health Pathways share many of the same officers and directors.

2

10. BioDerm markets itself as "a specialty Pharmaceutical and Medical Device Product Company dedicated to promoting healthier lives for its customers. The Company strives to be the best provider of quality products to prevent and treat illnesses that affect the health of patients treated with its products." To this end, BioDerm represented to BDS that it owns exclusive, world-wide patent licenses to market "four wound healing products and four consumer exercise and first aid products," four of which "have been approved by the United States FDA."

11. BioDerm's common stock was offered and sold to BDS pursuant to a Confidential Private Offering Memorandum for Common Stock, dated June 20, 2006 ("Offering Memorandum"), that included the following documents: (a) Form of Subscription Agreement, (the "Subscription Agreement"); (b) Business Plan Summary, dated June 2006 (the "Business Plan"); (c) Summary of Terms of Sale of Common Stock, Series A, dated June 20, 2006 (the "Term Sheet"); and (d) Private Offering of Common Stock document that reduced to layman's terms the business and products of BioDerm (the "Business Summary"). (A copy of the Offering Memorandum is attached as Exhibit A.)

12. Prior to purchasing the common stock of BioDerm, the Managers of BDS, Crymes Pittman, Lane Holmes and Joe Roberts, spent significant time and effort discussing BioDerm's business and the Offering Memorandum with Defendants J. Randall Hoggle, Daniel S. Romney and Jim Miller. As detailed below, BDS was induced to invest in BioDerm as a result of the material misstatements and omissions of material fact contained in the Offering Memorandum.

13. On July 12, 2006 (the "Offering Date"), BioDerm offered for sale its common stock to BDS by the delivery of the Offering Memorandum at a meeting that took place at 410 S.

President Street, Jackson, Hinds County, Mississippi. Defendants J. Randall Hoggle, Daniel S. Romney, and Jim Miller, as well as a former Health Pathways employee Ed Gubish, were present at this meeting on behalf of BioDerm. The Offering Memorandum offered for sale $1,200,000 of Common Stock, Series A of BioDerm at $0.83 per share for a pre-money, fully-diluted valuation of BioDerm of $8,822,000 as of June 20, 2006. The offering was represented to be made pursuant to Rule 501 of Regulation D of the Securities Act of 1933. The Subscription Agreement provides that "[t]he Stock is being offered directly by the Company through its directors and officers."

14. In reliance on the Offering Memorandum and representations made by Defendants J. Randy Hoggle, Daniel S. Romney, and Jim Miller, BDS made the following purchases of common stock of BioDerm. On November 1, 2006, BDS purchased common stock of BioDerm in the amount of $586,100. A check in that amount, drawn on the trust account of Pittman Germany Roberts and Welsh, was transmitted by BDS via Federal Express to Defendant Daniel S. Romney, which check was cashed and cleared payment. On December 14, 2006, BDS purchased common stock of BioDerm in the amount of $140,800. A check in that amount, drawn on the trust account of Pittman Germany Roberts and Welsh, was transmitted by BDS via Federal Express to Defendant Daniel S. Romney, which check was cashed and cleared payment. On January 17, 2007, BDS purchased common stock of BioDerm in the amount of $205,010. A check in that amount, drawn on the trust account of Pittman Germany Roberts and Welsh, was transmitted by BDS via Federal Express to Defendant Daniel S. Romney, which check was cashed and cleared payment. November 1, 2006, December 14, 2006, and January 17, 2006, are each referred to herein as a "Subscription Date."

15. On or about June 11, 2007, Lane Holmes, one of the Managers of BDS, was alerted to concerns regarding the capitalization of BioDerm. BDS immediately began investigating these matters and learned that the proceeds from its purchases of BioDerm's common stock had not been expended in accordance with the Offering Memorandum. Specifically, BDS has learned that approximately 41.5% ($386,885) of the proceeds from its investment in BioDerm have been used to pay off insider loans, at what BDS understands to be above market interest rates, to Defendants J. Randall Hoggle and James Miller (collectively $196,400) and to pay exorbitant salaries to Defendants J. Randall Hoggle and James Miller (collectively $190,485). Additionally, BDS has reason to believe that some or all of the proceeds from its investment were co-mingled with funds of Health Pathways. Further investigations by BDS have revealed numerous other material misstatements and omissions contained in the Offering Memorandum.

16. Immediately after BDS's discovery of irregularities regarding its investment in BioDerm, BDS attempted to recover its investment through discussions with officers and directors of BioDerm and Health Pathways. After these unsuccessful attempts to resolve this matter by BioDerm simply repaying BDS its investment, by letter dated July 24, 2007, BDS formally demanded that BioDerm refund, on or before August 2, 2007, its investment of $931,910. To date, BioDerm has refused to refund to BDS its investment or make any meaningful proposal to timely do so.

## CAUSES OF ACTION

### COUNT I

**VIOLATIONS OF THE MISSISSIPPI SECURITIES ACT AND AIDING/ABETTING (MISSISSIPPI CODE §§ 75-71-717 & 75-71-719)**

17. Paragraphs one (1) through sixteen (16) are incorporated herein by reference.

18. Count I is asserted by Plaintiff against Defendants BioDerm Sciences, J. Randall Hoggle, Daniel S. Romney, and James Miller and is based upon the Mississippi Securities Act, codified at Mississippi Code § 75-71-717(a)(2), together with the material participation and aider/abettor liability of the Act, codified at Mississippi Code § 75-71-719.

19. In violation of the Mississippi Securities Act, Defendants offered and sold, or caused others to offer and sell, common stock of BioDerm to Plaintiff by means of untrue statements of material fact and by means of omission to state material facts necessary in order to make the statements that were made, in the light of the circumstances under which they were made, not misleading. Such untrue statements of material fact and omissions primarily are contained in Offering Memorandum and supporting documentation. The untrue statements of material fact and omissions include, but are not limited to, the following:

(a) Misrepresentations regarding how the investment funds provided by BDS would be utilized. Specifically, Defendants represented to BDS that its funds would be allocated as follows:

| | |
|---|---|
| Provision for New Staffing | $225,000 |
| Marketing Materials | $50,000 |
| 100 Patients Study | $400,000 |
| Evaluation/Samples | $30,000 |
| Travel and Expenses | $30,000 |
| Product Manufacturing Run | $300,000 |
| Other working Capital | $65,000 |

Upon information and belief, BDS asserts that its funds were not used in accordance with the offering documents. Rather, approximately 41.5% ($386,885) of BDS's investment proceeds were used to pay off insider loans, at what BDS understands to be above market rates of interest, to Defendants J. Randall Hoggle and James Miller (collectively $196,400) and pay exorbitant salaries to Defendants J. Randall Hoggle and James Miller (collectively $190,485). Further,

upon information and belief, BDS believes that some or all of its investment proceeds were co-mingled with funds of Health Pathways.

(b) Misrepresentations regarding BioDerm's capital resources. Specifically, the Subscription Agreement states that "[t]he proceeds of this Offering, together with the Company's existing capital resources, including the funds from its lines of credit and long term notes are expected to enable the Company to finance its business operations." The Subscription Agreement further alleges the existence of lines of credit by warning the investor that BioDerm may have to issue additional securities "in order to maintain or obtain increases in its lines of credit." However, on the Offering Date and the first Subscription Date, BioDerm had virtually no cash and no lines of credit or long term notes. As of the second and third Subscription Dates, BioDerm had not amended the Offering Memorandum to disclose that it did not have, and had never had, any lines of credit or long term notes. Accordingly, BioDerm has materially misrepresented its financial condition as of the Offering Date and each Subscription Date. Further, BioDerm misrepresented in the Business Plan its financial needs by stating that "[t]his completes all equity funding required for its current U.S. financial plan." BioDerm knew on the Offering Date and each Subscription Date that it did not have funds, when combined with the investment of BDS, to accomplish the stated market objectives.

(c) Misrepresentations regarding future sales. Specifically, notwithstanding that BioDerm held no customer sales contracts on the Offering Date (or to date as far as BDS is aware), BioDerm presented financial projections in the Business Plan and the Business Summary that showed anticipated sales for each product line for a five year period from 2006-2010. The projections appear to have been based upon a stated Commercialization Launch Plan in the Business Plan that outlined in detail the commercialization strategy to be conducted in the

second half of 2006 and the first half of 2007. BDS is unaware that any of these initiatives were attempted or accomplished. Further, the financial projections referred BDS to a "Financial Plan" for more details, which plan was not provided to BDS.

(d) Misrepresentations regarding facilities, located in Oxford, Mississippi, to manufacture products. Specifically, the Business Plan provides that BioDerm was "setting up a manufacturing facility in Oxford, Mississippi" and that "[t]he Oxford facility has set up manufacturing infrastructure through federal grants." In fact, no such manufacturing infrastructure exists, or has ever existed. Further, the Business Plan provides that, in the event that the Oxford facility was not completed by January 2007, BioDerm would have "two U.S. contract outsourcing manufacturers (sic) back-ups ready." Upon information and belief, BDS states that no such outsourcing contracts have been secured to date.

(e) The Business Plan materially misstates that BioDerm holds the necessary patent licenses to conduct business and/or omits material information regarding BioDerm's rights to such licenses.

(f) The Business Plan and the Business Summary materially misstate that BioDerm had entered the wound healing "Acute Care" market in 2006 by failing to disclose information reasonably necessary to make such statement in light of the circumstances in which it was made, not misleading. The Business Plan and the Business Summary also materially misstated that BioDerm planned to conduct commercialization studies during 2006-2007 for the wound healing "Chronic Care Market". Upon information and belief, BDS states that BioDerm has spent little, if any, of BDS's investment proceeds on commercialization studies.

20. Each of the Defendants named in this Count acted in concert and conspiracy with the other Defendants, or knowingly and materially aided the other Defendants in acts, practices

or course of business which included aiding in the sale of the subject securities by means of misstatements of material facts or omission to state material facts, and thus each Defendant is responsible as aiders and abettors of the subject wrongful conduct pursuant to Miss. Code § 75-71-719. Further, Defendants, individually and in concert, directly and indirectly, engaged and participated in a continuous course of conduct to conceal the true facts about the business, operations, risks and future outlook of BioDerm.

21. At the time of the subject material misrepresentations and omissions, BDS was ignorant of their falsity, and believed them to be true. Had BDS known of the true facts, which were not disclosed by Defendants, BDS would not have purchased the common stock of BioDerm.

22. As a direct and proximate result of Defendants' wrongful conduct, BDS has suffered substantial financial damages. Specifically, BDS has suffered financial damages in the amount of $931,910, representing the principal amount paid by BDS for the common stock of BioDerm.

23. Pursuant to Mississippi Code § 75-71-717(a)(2), BDS is entitled to recover the full consideration paid to Defendants for the subject BioDerm stock, totaling $931,910, together with interest at eight percent (8%) per year from the date of delivery of the funds. Further, pursuant to Mississippi Code § 75-71-717(a)(2), BDS is entitled to an award of costs and reasonable attorneys' fees incurred as a direct and proximate result of Defendants' wrongful conduct.

## COUNT II

## VIOLATIONS OF THE MISSISSIPPI SECURITIES ACT FOR CONTROLLING PERSON LIABILITY (MISSISSIPPI CODE § 75-71-719)

24. Paragraphs one (1) through twenty-three (23) are incorporated herein by reference.

25. Count II is asserted by BDS against Defendant Health Pathways. By virtue of its ownership interest in BioDerm, high level of control, intimate access to information, participation in and/or knowledge of the misleading information disseminated by BioDerm, and participation in the inducements of BDS to purchase the common stock of BioDerm, including influence and control over the contents of the Offering Memorandum, Defendant Health Pathways acted as a controlling person of BioDerm within the meaning of Miss. Code § 75-71-719. Specifically, officers and directors of Health Pathways had direct and supervisory involvement in the day-to-day operations of BioDerm and, therefore, had the power to control or influence the actions of BioDerm which gave rise to the subject securities fraud.

26. As set forth in Count I, Defendants BioDerm Sciences, J. Randall Hoggle, Daniel S. Romney, and James Miller violated the Mississippi Securities Act by their acts and omissions as alleged in this Complaint. By virtue of its position as a controlling person of BioDerm, Health Pathways is jointly and severally liable, pursuant to Miss. Code § 75-71-719, for the wrongful acts and omissions of BioDerm Sciences, and its officers and directors, J. Randall Hoggle, Daniel S. Romney, and James Miller.

27. Pursuant to Mississippi Code §§ 75-71-717(a)(2) and 75-71-719, BDS is entitled to recover from Health Pathways the full consideration paid for the subject BioDerm stock, totaling $931,910, together with interest at eight percent (8%) per year from the date of delivery of the funds. Further, pursuant to Mississippi Code § 75-71-717(a)(2), BDS is entitled to an

award of costs and reasonable attorney's fees incurred as a direct and proximate result of Defendants' wrongful conduct.

## COUNT III

## COMMON LAW FRAUD

28. Paragraphs one (1) through twenty-seven (27) are incorporated herein by reference.

29. The material misrepresentations and omissions of Defendants were made knowingly and willfully with the intent of misleading and deceiving BDS. BDS, without knowledge of the true facts and circumstances, relied to its detriment on these material misrepresentations of Defendants in making its decision to purchase the subject common stock of BioDerm. Had BDS been aware of the true facts and circumstances, BDS would not have purchased the common stock of BioDerm.

30. As a result of Defendants' knowing and willful material misrepresentations and omissions, BDS has incurred damages in the amount of $931,910, representing the full consideration paid for the subject BioDerm stock. Further, BDS has lost income (reasonable rate of return) on the money invested in the common stock of BioDerm. Finally, the intentional and outrageous nature of Defendants' conduct supports an award of exemplary damages in such an amount as to punish Defendants and deter repetition of such conduct in the future.

## PRAYER FOR RELIEF

ACCORDINGLY, Plaintiff prays for judgment and relief as follows:

(a) That all Defendants be held jointly and severally liable for violations of the Mississippi Securities Act (Counts I and II);

(b) That all Defendants be held jointly and severally liable for defrauding BDS in connection with its purchase of the common stock of BioDerm (Count III);

(c) That BDS be awarded damages not less than the total amount it paid for the common stock of BioDerm, $931,910, plus 8% per annum simple interest thereon from the date of delivery of the funds, costs and reasonable attorneys' fees (as provided by Mississippi Code §§ 75-71-717(a)(2) and 75-71-719);

(d) That BDS be awarded exemplary damages in an amount sufficient to punish Defendants for their outrageous and intentional wrongdoing and to deter repetition of such conduct in the future;

(e) That all costs incurred by BDS in connection with this action, including all fees and costs of experts, all discovery and deposition costs, and expenses, be taxed, jointly and severally, to Defendants; and

(f) That the Court award to BDS any additional relief that it may deem just and appropriate.

This the 9th day of August, 2007.

Respectfully submitted,

BDS INVESTMENTS, LLC

BY: _____
    One of Its Attorneys

OF COUNSEL:

Robert L. Gibbs, Esq. (MSB No. 4816)
John M. Flynt, Esq. (MSB No. 10455)
Joseph Anthony Sclafani, Esq. (MSB No. 99670)
Brunini, Grantham, Grower & Hewes, PLLC
1400 Trustmark Building
248 East Capitol Street (39201)
Post Office Drawer 119
Jackson, Mississippi 39205-0119
Telephone: (601) 948-3101
Facsimile: (601) 960-6902
rgibbs@brunini.com
jflynt@brunini.com
jsclafani@brunini.com